# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01176-RM-SBP

SABRINA STANLEY and
JUDY KOJETIN,

      Plaintiffs,

v.

PANORAMA ORTHOPEDICS AND SPINE CENTER, P.C., and
PMG LLLP,

      Defendants.

---

## ORDER GRANTING PRELIMINARY APPROVAL
## OF PROPOSED CLASS ACTION SETTLEMENT

---

**Susan Prose, United States Magistrate Judge**

This matter is before the Court on the Joint Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 34 ("Joint Motion") brought by the two named Plaintiffs in this suit ("Named Plaintiffs"), and by Defendants. The parties seek an order from this court as follows:

1. Granting certification of a stipulated collective action and class under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Federal Rule of Civil Procedure 23 made up of "all hourly business office employees [of Defendants] who performed work off the clock from May 11, 2016 through the date of execution of the Settlement Agreement";

2. Granting preliminary approval of the parties' Settlement Agreement and Notice (ECF No. 34-1); and

3. Setting a final fairness hearing.

Joint Motion at 1, 20.

The parties noticed their consent to this court's jurisdiction to determine the Joint Motion and the Unopposed Motion for Attorney Fee, ECF No. 35 ("Attorney Fee Motion"), as well as a forthcoming Joint Motion for Final Approval of Class Action Settlement. ECF No. 36. Judge Moore referred the Joint Motion and the Attorney Fee Motion to this court. ECF No. 37 (Memorandum). The court has reviewed the Joint Motion, the proposed Settlement Agreement attached to the Joint Motion (ECF No. 34-1 at 2-18) ("Proposed Settlement Agreement"); the proposed Notice of Preliminary Approval of Settlement and Hearing Date for Final Court Approval, attached as Exhibit 1 to the Proposed Settlement Agreement (ECF No. 34-1 at 19-24) ("Notice"); and the proposed Request for Exclusion (Opting Out) from Panorama Settlement (ECF No. 34-1 at 25-27) ("Request for Exclusion"); and various pleadings and other documents filed in connection with this case. For the reasons that follow, the court **GRANTS** the Joint Motion and Attorney Fee Motion and enters an order as set forth below.

## BACKGROUND[1]

On May 11, 2022, the Named Plaintiffs filed this lawsuit as a putative class and collective action. *See* Class and Collective Action Complaint for Unpaid Wages, ECF No. 1. The Named Plaintiffs were "hourly business workers in Defendants' private orthopedical medical practice." *Id.* ¶ 1. In broad terms, the complaint alleges that Defendants failed to pay the Named Plaintiffs and others certain wages required by Colorado wage statutes, including the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 *et seq.*, and the FLSA. *Id.* ¶¶ 4-6. Defendants deny the allegations and deny that they are liable. *See generally* Response to Plaintiffs' Class and Collective Action Complaint for Unpaid Wages, ECF No. 18.

---

[1] The following synopsis is taken from the parties' Joint Motion and accompanying exhibits.

The parties engaged in extensive settlement negotiations and exchanged what they describe as "a large volume of timekeeping and wage payment data" in connection with those discussions. Joint Motion at 2. After two formal mediations, the parties came to an agreement in principle on a class-wide settlement for the Named Plaintiffs' and the putative class members' FLSA and Colorado wage claims. Under the Proposed Settlement Agreement, Defendants will pay $299,000.00 to resolve the dispute (the "Settlement Fund"), a number which includes "a $10,000.00 service award to each of the Named Plaintiffs, attorneys' fees and costs, back wages, and statutory penalties and damages." Settlement Agreement § VI. In addition, Defendants "will pay the employer's share of FICA and FUTA taxes, and other applicable employer tax contributions, arising from the payment of back wages," and "the costs of a Claims Administrator up to $10,000.00. Any administrative costs above $10,0000.00 will be funded from the Settlement Fund." *Id.* Defendants will select a third-party claims administrator, to be approved by Plaintiffs, whose tasks will include distributing the funds. *Id.* § I. ¶ N. The Proposed Settlement Agreement includes a detailed plan for creating a settlement fund account, calculating the amounts due to each class member, distributing the funds, and handling any unclaimed payments. *Id.* § XII.

## ANALYSIS

The parties ask the court for preliminary approval of their settlement agreement in this so-called "hybrid" class action involving both a Rule 23 class and an FLSA collective action. The court has jurisdiction under 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367 (supplemental jurisdiction).

As many judges in this District have recognized, hybrid class actions are "a relatively

recent trend." *See, e.g.*, *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016). These hybrid class actions "have troubled district courts across the country because of the inherent conflict between the opt-in requirement of FLSA collective actions and the opt-out provisions of Rule 23(b)(3) class actions." *Id.*; *see also Hunter v. CC Gaming, LLC*, No. 19-cv-01979-DDD-KLM, 2020 WL 13444205, at *2 (D. Colo. May 12, 2020) (discussing the tension between Rule 23's requirement that class members opt-out in order to avoid the binding effect of a class judgment and the FLSA's requirement that class members must affirmatively opt-in in order to be bound by the judgment). While "courts across the country have reached differing conclusions as to whether a Rule 23 state law wage claim may proceed in the same action as an FLSA collective wage claim," it is clear that "the most recent cases arising in this District tend toward approving such arrangements." *Hunter*, 2020 WL 13444205, at *2 (quoting *Pliego*, 313 F.R.D. at 125) (citing *Bass v. PJCOMN Acquisition Corp.,* No. 09-cv-01614-REB-MEH, 2011 WL 2149602, *5 (D. Colo. June 1, 2011) (observing, in exercising supplemental jurisdiction over a Rule 23 state law class claim, that requiring two parallel actions "would not serve the interests of judicial economy, convenience, and fairness"); *Lozoya v. AllPhase Landscape Constr., Inc.*, No. 12-cv-1048-JLK, 2015 WL 1524639, at *1 (D. Colo. Mar. 31, 2015) (following *Bass*). This court finds no reason to take a different approach and will allow the parties here to proceed with their proposed hybrid settlement class.

In this instance, as in *Hunter*, "[t]he FLSA claims are predicated on the same facts as the state law claims and class members' payments under the settlement agreement are not differentiated based on the claims asserted—given that the class members are receiving payment for all unpaid wages—including overtime premiums, in addition to a statutory penalty." *See*

2020 WL 1344205, at *2; *see also* Notice, ECF No. 34-1 at 22 (notifying class members of their compensation for back wages, unpaid overtime, statutory penalties, and damages). Too, the putative class members—"all hourly business office employees who performed work off the clock from May 11, 2016 through the date of execution of the Settlement Agreement"—are identical for both the state wage claims and the FLSA claims.

The court here recognizes that the members of the putative class are low-wage clerical workers who likely would be unable to pursue their claims outside the vehicle of a class notice. Absent the mechanism of a class action, it is highly probable that the issue of unpaid "off-the-clock" work would never have been addressed by means of litigation.[2] And the parties have agreed to treat the settlement as a hybrid action. Taking into account the totality of these circumstances, and bearing in mind the "ample current precedent to support proceeding with a hybrid class action," this court will allow a settlement class here. *See Hunter*, 2020 WL 13444205, at *2 (citing *Pliego*). The court finds that the requirements for class certification under Rule 23 and the requirements for a collective action under the FLSA are satisfied. The court further preliminarily approves the Proposed Settlement and Notice, the proposed service awards, and the proposed attorney fee award to class counsel of thirty-three per cent of the settlement fund.

### A.     Rule 23 Class

"Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the

---

[2] Defendants expressly do not admit liability. Proposed Settlement Agreement § VII.

fairness of the settlement or opt out of the settlement." *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009)). "In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms." *Id.* (citing Fed. R. Civ. P. 23(e)(2); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

The court's task here is to conduct the first-step analysis, guided by the directive that "[p]reliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Id.* (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). These standards, plainly, "are not as stringent as those applied for final approval." *Id.* (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)). A proposed class settlement should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives." *Id.* (quoting *Motor Fuel*, 286 F.R.D. at 492).

### 1.    Preliminary Certification of the Rule 23 Class

At the preliminary approval stage, the court must satisfy itself that the class certified for settlement fits within the certification requirements articulated in Federal Rule of Civil Procedure 23. *Suaverdez v. Circle K Stores, Inc.*, No. 20-cv-01035-RM-NYW, 2021 WL 4947238, at *2 (D. Colo. June 28, 2021) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)), *report and recommendation adopted*, 2021 WL 5513740 (D. Colo. Oct. 19, 2021). First, the

class must meet the numerosity, commonality, typicality, and adequacy-of-representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a)(1)-(4) (parties seeking certification must demonstrate that the class is "so numerous that joinder of all members is impracticable," that there are "questions of law or fact common to the class," that the "claims or defenses of the representative parties are typical of the claims or defenses of the class," and that the "representative parties will fairly and adequately protect the interests of the class"). If these requirements are met, the court then must ensure that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Suaverdez*, 2021 WL 4947238, at *2 (recognizing that "[a]ttention to these requirements 'is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold'") (quoting *Amchem*, 521 U.S. at 620).

### a.      Rule 23(a)

**Numerosity.** A certifiable class must be so numerous "that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), and class members must "be ascertainable with the use of objective criteria." *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ-MEH, 2014 WL 1133299, at *3 (D. Colo. Mar. 21, 2014). "'Impracticable' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class." *Pliego*, 313 F.R.D. at 125-26 (quotation omitted). The United States Court of Appeals for the Tenth Circuit has "never adopted" a presumption of numerosity at a certain number of claimants, but rather "grant[s] wide latitude to the district court in making this determination."

*Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

Here, the parties agree that there are 157 putative class members, who were identified through "all available time-worked and wage payment records." Joint Motion at 2-3. Larger classes have existed, to be sure. *See, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *5 (D. Colo. Feb. 15, 2017) (class of "hundreds, if not thousands, of persons" warranted class certification), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017); *Martinez v. Reams*, No. 20-cv-00977-PAB-SKC, 2020 WL 7319081, at *4 (D. Colo. Dec. 11, 2020 (class of approximately 345 inmates met the numerosity requirement); *Murray v. Tips, Inc.*, No. 18-cv-00937-RM-KLM, 2020 WL 1852382, at *3 (D. Colo. Apr. 13, 2020) (545 putative class members satisfied numerosity requirement). While not quite so large a group is present here, the joinder of over 150 individual plaintiffs certainly "would frustrate the efficient management of this litigation and be impracticable for purposes of resolving this matter." *See Suaverdez*, 2021 WL 4947238, at *2; *see also, e.g.*, *Cooper v. Noble Casing, Inc.*, No. 15-cv-1907-WJM-CBS, 2016 WL 6525740, at *2 (D. Colo. Nov. 3, 2016) (finding that allegation of 50 to 100 class members satisfied the numerosity requirement); *A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-cv-02293-MSK-MJW, 2012 WL 4463869, at *5 (D. Colo. Sept. 27, 2012) (finding that "100 potential class members" was "a number that certainly prevents effective joinder here"), *on reconsideration of other issues in part*, 2013 WL 3199986 (D. Colo. June 24, 2013).

The court finds that the numerosity requirement of Rule 23(a)(1) is met.

**Commonality**. Next, Rule 23 requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A finding of commonality requires only a single question of

law or fact common to the entire class." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194-95 (10th Cir. 2010). Commonality exists if class members "challenge the application of a commonly-applied policy," even if particular circumstances differ among the class members. *Pliego*, 313 F.R.D. at 126. Commonality also will be found if "the class members have 'suffered the same injury' such that the claims of the class are based on a common contention'" and "the determination of the truth or falsity of this contention 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Martinez*, 2020 WL 7319081, at *4 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The parties assert that commonality is met here because "[t]he proposed class features two basic questions of law and fact that are common to every member of the class: Whether each worked hours off-the-clock and whether non-payment of wages for those hours violated state and federal wage law." Joint Motion at 7. The court agrees that these common questions satisfy the commonality requirement of Rule 23(a)(2). *See Hunter*, 2020 WL 13444205, at *3 (commonality requirement satisfied where "class members were all subject to the same company-wide policy of non-payment of wages and overtime premiums for hours worked," even if there were "factual differences for each class member on the number of hours worked").

***Typicality***. The typicality requirement of Rule 23(a) mandates that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Bass*, 2011 WL 2149602, at *3. "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Devaughn*, 594 F.3d at 1198-99.

This requirement is also met. The Named Plaintiffs, like all members of the putative class, allege that they were not paid for the off-the-clock hours they worked and that this non-payment violated the same state and federal laws as to each of them. Their claims thus are readily identified as "typical" of the claims of the putative class, meeting the requirement of Rule 23(a)(3).

***Adequacy of Representation.*** Finally, to demonstrate that class certification is warranted, the parties must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, too, the court finds this standard has been met.

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter v. Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). The "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (quotations omitted). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

Having thoroughly reviewed the papers submitted by the parties, and having examined

the record as a whole, this court discerns no reason to question the parties' joint representations that the Named Plaintiffs and their counsel have no interests antagonistic to those of the putative class members, *see* Joint Motion at 9, and that the Named Plaintiffs and their counsel "will prosecute this action vigorously on behalf of the class." *Id.* These statements are supported by the record. And "[t]he thoroughness and apparent fairness of the proposed settlement agreement" supports these assertions and support this court's conclusion that the adequate-representation requirement—both as to the competence of counsel and the class representatives' ability to prosecute the litigation to protect the interests of the class—confirms the court's conclusion that the adequacy-of-representation requirement under Rule 23(a)(4) is satisfied. *Hunter*, 2020 WL 13444205, at *4.

### b.    Rule 23(b)(3)

Having found that the four elements of Rule 23(a) have been met, the court next considers whether any of the three subsections of Rule 23(b) are satisfied. Fed. R. Civ. P. 23(b) ("[a] class action may be maintained if Rule 23(a) is satisfied *and* if" one of the three components of Rule 23(b) are met) (emphasis added). Here the parties assert that Rule 23(b)(3) is met. Joint Motion at 9-11. The court therefore examines whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) further outlines four "matters pertinent to these findings": "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

    ***Predominance of common questions.*** Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Pliego*, 313 F.R.D. at 127.

    The parties agree that the essence of this matter may be articulated as "a controversy spanning Defendants' hourly front office workforce and each time a worker worked off-the-clock a[nd] was not compensated for that time." Joint Motion at 10. The court perceives no reason to question that this is, in fact, "the dominant inquiry" in this case. *Hunter*, 2020 WL 13444205, at *4. Likely, the *amount* of damages will vary among the class members "because not all employees are owed the same wage, worked the same number of hours, or even remained employed for the same amount of time." *See id.* But the substance of the class members' claims will be "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, informed as they will be by "evidence . . . susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (contrasting "[a]n individual question" as "one where members of a proposed class will need to present evidence that varies from member to member") (internal quotation marks and quotation omitted). The court agrees with the parties that the common questions of fact and law, identified above, predominate over any issues affecting only individual class members. *Hunter*, 2020 WL 13444205, at *4 (finding predominance where "the class members were subject to the same practices related to the payment of their wages, during a specified time period").

***Superiority***. The court also finds that a class action settlement is a superior method of adjudicating this case.

The parties represent that "the absent class members have shown no interest in controlling the litigation of separate actions," that "no other litigation regarding this controversy has been commenced," and that "concentration of claims here is desirable as the Defendants reside in this judicial district"—all considerations pertinent to the superiority inquiry. Joint Motion at 10 (citing Fed. R. Civ. P. 23(b)(3)(A)-(C)). "These factors in support of class action outweigh any difficulties in managing the class action," which the court anticipates will be minimal under the circumstances present here. *See Sobolewski v. Boselli & Sons, LLC*, No. 16-cv-01573-RM-STV, 2017 WL 6945045, at *6 (D. Colo. Nov. 15, 2017), *report and recommendation adopted*, 2018 WL 3838140, at *6 (D. Colo. June 13, 2018) (accepting recommendation to certify class where the magistrate judge had found common questions of law and fact in claims alleging meal and rest break violations). Too, the court deems a class action a superior method for adjudicating the relatively small claims of low-wage workers. As "courts in this District have repeatedly recognized, . . . a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued." *Hunter*, 2020 WL 13444205, at *4 (citations omitted). In short, the superiority requirement is satisfied here.

\*     \*     \*

Accordingly, the Court finds that the requirements of Fed. R. Civ. P. 23(b)(3) are met, and the court **PRELIMINARILY CERTIFIES**, pursuant to Federal Rule of Civil Procedure 23(b), a settlement class comprise of "all hourly business office employees who performed work off the clock from May 11, 2016 through the date of execution of the Settlement Agreement."

### 2.      Preliminary Approval of the Rule 23 Settlement

Next, the court turns to the question of the preliminary approval of the Settlement

Agreement insofar as it purports to settle a Rule 23 class action.

"If the proposed settlement class satisfies the requirements of Rule 23(a) and (b), then the

Court must separately evaluate whether the settlement agreement is 'fair, reasonable, and

adequate' under Rule 23(e).'" *In re Crocs, Inc. Sec. Litig.*, Nos. 07-cv-02351-PAB-KLM, 07-cv-

02412, 07-cv-02454, 07-cv-02465, 07-cv-02469, 2013 WL 4547404, at *4 (D. Colo. Aug. 28,

2013) (quoting Fed. R. Civ. P. 23(e)(2)). The authority to approve a settlement of a class action

suit is committed to the sound discretion of the trial court, and settlement approval will not be set

aside absent an abuse of discretion. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th

Cir. 1984). Considerations pertinent to the determination of whether a proposed settlement is

"fair, reasonable, and adequate" are whether (A) the class representative and class counsel have

adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief

provided for the class is adequate; and (D) the proposed settlement treats class members

equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). In addition, the Tenth Circuit

has directed that courts consider four factors in assessing the fairness, reasonableness, and

adequacy of a proposed class settlement: (1) whether the proposed settlement was fair and

honestly negotiated; (2) whether serious questions of law and fact exist that would place the

ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery

outweighs possibility of future relief after protracted and expensive litigation; and (4) the

judgment of the parties that the settlement is fair and reasonable. *Peace Officers' Annuity &*

*Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-00304-WJM-NRN, 2021 WL 1387110, at *3 (D.

Colo. Apr. 13, 2021) (citing *Jones*, 741 F.2d at 324). "If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable." *Martinez*, 2020 WL 7319081, at *7.

As an initial matter, the court has already determined the adequacy of the representation and therefore need not re-address that point here. The court therefore proceeds to analyze the remaining relevant considerations.

***Fair and honest negotiations.*** As to whether the Proposed Settlement Agreement was negotiated at arms-length, the parties reached the settlement with the assistance of a professional, experienced mediator, Judge Bill Meyer of the Judicial Arbiter Group[3]—with whom they met for a formal mediation not once, but twice. *See, e.g.*, *Molycorp*, 2017 WL 4333997, at *4 ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved."); *see also Satchell v. Fed. Express Corp.*, Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Thus, a presumption exists that the proposed Settlement Agreement is fair, adequate, and reasonable. *Molycorp*, 2017 WL 4333997, at *4.

But even if there were no such presumption, the court is satisfied that the Proposed Settlement Agreement is the culmination of fair and reasonable arms-length negotiations. The

---

[3] According to the Judicial Arbiter Group website, Judge Meyer served as a judge on the Denver District Court for sixteen years before joining JAG, where he has worked as an arbiter for twenty-four years. *See* <u>Judge Bill Meyer - JAG Inc</u> (last visited April 20, 2024).

negotiations were interspersed with, and apparently significantly informed by, the exchange of large amounts of document discovery. Further, according to counsel's joint representation to the court, neither side was a pushover during this phase of the proceedings: "Settlement negotiations were contested and contentious. Counsel utilized their experience in similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk, to arrive at a fair and reasonable compromise." Joint Motion at 12. The court has no reason to doubt these representations, which are apparent in the undisputed record here. Put simply, the parties have met their burden to demonstrate that the negotiations leading to the Proposed Settlement were in every respect fair, honest, and appropriate.

*Serious questions of law.* The parties point to a split among Colorado state courts, as well as courts in this District, concerning whether Colorado Minimum Wage Act claims are governed by a six-year statute of limitations, or whether a shorter limitations period—two or three years—applies. Joint Motion at 12 & n.1 (collecting cases). That uncertainty is sufficient to place the question reasonably within the realm of a "serious question of law" and to render uncertain the ultimate scope of damages that may be obtainable in the case. *See Jones*, 741 F.2d at 324. Avoiding that uncertainty bolsters the court's conclusion that fairness attends a mediated resolution of the conflict between the parties. Thus, the court finds that a serious question of law exists.

*Value of immediate recovery versus future relief.* There is no doubt that the parties' decision to define the coverage of the settlement for "six years prior to the date of the filing of the Complaint in the Litigation through the date of Final Approval," *see* Settlement Agreement § IX., eliminates any risk associated with a potential finding that a shorter statute of limitations

might apply. Therefore, the court has no reason to dispute the parties' representation that resolving the question of the scope of damages—early on, by means of a settlement—redounds to the benefit of the parties and saves the costs of future litigation at the trial court and appellate levels.

      ***Adequate relief and judgment of the parties***. To determine whether the proposed relief is adequate, courts consider the costs, risks, and delays associated with a trial or appeal, the effectiveness of the proposed distribution method for class funds, the terms of any proposed award of attorney's fees, and the terms of the proposed Settlement Agreement. Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

      As set forth above, proceeding with this litigation carries with it risks for the class members who lack assurance of the outcome of the statute of limitations question. And as the parties jointly represent, there will be a dispute about the numbers of hours worked off-the-clock by each class member if the matter is not settled, Joint Motion at 13, risking a lesser recovery for some class members. Too, the court deems settlement favorable to the putative class members because "recovery for [their] claims is likely too small to provide an incentive for individual class members to adjudicate individual claims." *In re Crocs, Inc. Sec. Lit.*, 306 F.R.D. 672, 689 (D. Colo. 2014). It is an obvious, but noteworthy, point that there is no way to predict the outcome of any yet-to-be-filed dispositive motions, and even if the class members' claims survive, trial has not been set and may be many months, if not several years, distant. Even if the case gets to trial, nothing is assured: "[t]rial of any case, let alone a class action, is inherently risky." *Suaverdez*, 2021 WL 4947238 (quoting *Zyda v. Four Seasons Hotels & Resorts*, No. CV 16-00591-LEK-RT, 2020 WL 9762910, at *2 (D. Haw. Apr. 1, 2020)).

As to the efficacy of the proposed method for distributing class funds, the parties have agreed to retain a claims administrator who will administer the settlement fund in accordance with the Notice and oversee the distribution of the funds to the putative class members. Proposed Settlement Agreement § I. ¶ N.; *id.* § X. (describing duties of claims administrator). If the class settlement gains final approval, the claims administrator will handle the calculation and distribution of the amounts due to each class member. *Id.* § X. ¶ B. The court identifies no deficiencies in this proposal that would justify withholding preliminary approval of the proposed settlement. *See Molycorp*, 2017 WL 4333997, at *3 (awarding preliminary approval to proposal where no "obvious deficiencies" were identified).

With regard to attorney's fees, the parties set forth a definite number: the Proposed Settlement Agreement specifically provides Plaintiffs' counsel an award of attorney's fees in the total amount of $99,666.67—one-third of the settlement fund—"plus reasonable out-of-pocket costs and expenses not to exceed $10,000." Proposed Settlement Agreement § XIII. ¶ A. These amounts are typical of those commonly found reasonable in class settlements. *See Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ("In situations such as this, where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable.") (citing *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (39% of the fund awarded as fees); *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK-CBS, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006) (stating that "30% of the fund" is the

"customary fee award . . . under the percentage of the fund approach")).[4] The court finds that this figure is reasonable here, where Plaintiffs' counsel—an attorney with nearly two decades of experience in litigating matters of this type—has expended over 180 hours of litigation time and incurred $2,250.75 in costs. *See* Milstein Decl., ECF No. 35-1 ¶ 12.

Finally, the parties and counsel believe that the Proposed Settlement Agreement is fair and reasonable. Joint Motion at 13. Courts "give[] weight to [counsel's] favorable judgment as to the fairness and reasonableness of the proposed settlement." *Suaverdez*, 2021 WL 4947238, at *9 (quoting *Nakkhumpun v. Taylor*, No. 12-cv-01038-CMA-CBS, 2015 WL 6689399, at *6 (D. Colo. Nov. 3, 2015)); *see also Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."). All counsel in this case are experienced in complex litigation, including wage-and-hour litigation. And the parties, "with the advice of experienced counsel," represent that they "are confident that the settlement is fair and reasonable." Joint Motion at 13.

Considering all of the factors discussed above, the court finds that the Parties have demonstrated that the relief provided by the Proposed Settlement Agreement is fair, reasonable, and adequate.

***Equitable treatment***. Lastly, Rule 23(e) provides that, in order for a settlement to be fair,

---

[4] Courts in this district have found fees even greater than one-third of the settlement amount to be reasonable. *Shahlai v. Comcast Cable Commc'ns Mgmt., LLC*, No. 16-cv-02556-WJM-NRN, 2020 WL 3577395, at *4 (D. Colo. July 1, 2020) (finding that a 58.4% fee award was reasonable "considering the effort expended on this case by class counsel, the risks and difficulties inherent in this sort of litigation, the discovery undertaken, and the skill required and dedication displayed over the litigation of this matter"); *Whittington*, 2013 WL 6022972, at *6 ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award.").

adequate, and reasonable, the proposal must "treat[ ] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The parties do not separately address this factor, but the court has thoroughly examined the Proposed Settlement Agreement and finds nothing in it suggesting some disparity in treatment among members of the class. The formula for calculating the amounts due is precisely the same for each class member, with variations in the amounts ultimately paid to each driven by the individual's "dates of employment and status as currently employed or separated from employment." Proposed Settlement Agreement § XII. ¶ D. The court identifies nothing in this process that would call into question this method as a fair and equitable approach to distributing the funds among the class members. Neither does the Proposed Settlement Agreement improperly grant preferential treatment to the Named Plaintiffs as class representatives, each of whom will receive a $10,000.00 service award. *Id.* § VI. Such service awards are typical in class action settlements. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case.").

*     *     *

In sum, upon consideration of all pertinent factors, the court respectfully finds that the proposed settlement is "fair, reasonable, and adequate" and **PRELIMINARILY APPROVES** the settlement under Rule 23(e).

### B.    FLSA Collective Action

#### 1.    FLSA Conditional Certification

Section 216(b) of the FLSA provides that an action under the FLSA for overtime

20

violations "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved the use of a two-step process for determining whether the putative class members are similarly situated to the named plaintiff. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-1105 (10th Cir. 2001). At the first step, prior to discovery, the district court makes a "notice stage" determination of whether the plaintiffs are similarly situated. For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id*. at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). If the plaintiff meets this standard, then the court may order that the defendant provide contact information for all employees and former employees that may be eligible to participate in the collective action, and the court may approve a form of notice to be sent to all of those individuals. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-74 (1989).

The court finds that Plaintiffs have presented "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. And in light of the overlap between the requirements for preliminarily certifying a Rule 23 class and an FLSA collective action, "[f]or essentially the same reasons explained above, as to Rule 23, and given the parties' stipulation and joint motion, the Court also finds that preliminary certification of the proposed FLSA class is warranted under the comparatively lenient standard for preliminary certification and notice of an FLSA collective action." *Shahlai v. Comcast Cable Commc'ns Mgmt., LLC*, No. 16-cv-02556-WJM-NRN, 2018 WL 3870129, at *6

(D. Colo. Aug. 15, 2018) (citing *Thiessen*, 267 F.3d at 1102-03) (discussing motion to certify hybrid class action).

Therefore, the court **PRELIMINARILY CERTIFIES** an FLSA collective settlement class consisting of "all hourly business office employees who performed work off the clock from May 11, 2016 through the date of execution of the Settlement Agreement."

### 2.    Preliminary Approval of the FLSA Settlement

A district court may approve an FLSA collective action settlement after "scrutinizing the settlement for fairness" and deciding whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). "[I]n determining whether to approve an FLSA settlement, the Court considers whether (1) the FLSA settlement is reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees." *Herring v. Thunder Ridge Trucking & Filtration, Inc.*, No. 15-cv-00062-RM-KLM, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016). The parties submit that all three components of the fairness test are satisfied here, Joint Motion at 13-18, and this court agrees.

***Bona fide dispute.*** Parties seeking approval of an FLSA settlement may establish that a bona fide dispute exists by presenting: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage."

*Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, *1 (D. Colo. Feb. 24, 2014). In light of the extensive analysis of the parties' legal arguments and documentary submissions set forth above, only a brief analysis is necessary to support the court's finding that the parties have satisfied all five *Baker* factors.

First, Defendants dispute that there was any failure on their part to pay wages and assert that any violations of the FLSA were not willful. Second, the parties represent that Defendants are in the business of providing orthopedic healthcare and that the class members were hourly clerical employees. Third, while Defendants do not dispute their employees' right to be paid minimum and overtime wages pursuant to the FLSA, they do dispute that they failed to pay for all off-the-clock hours their employees worked. Fourth, the employees allege that Defendants did in fact fail to pay for all off-the-clock hours they worked. Fifth, the parties represent that they "based their settlement discussions on an in-depth review of Defendants' time-worked and wages-paid records," and while the parties "dispute the accuracy of those records," that dispute was taken into consideration in formulating the settlement. Joint Motion at 15.

Weighing these five factors, the court finds that this is a bona fide dispute. *See Whittington*, 2013 WL 6022972, at *4 (stating that "this case is not sham litigation . . . it very much involves a bona fide dispute between adversarial opponents").

**Fair and equitable proposed settlement.** "With respect to the second factor" for evaluating the propriety of an FLSA settlement—whether the settlement is fair and equitable to all parties—"this Court evaluates, first, whether the settlement is fair and reasonable, and, second, whether the settlement undermines the purposes of the FLSA." *Herring*, 2016 WL 7868819, at *2.

In connection with the first question of whether the settlement is fair and reasonable, courts consider in the FLSA context the same factors applied in a Rule 23 settlement fairness analysis. *See Baker*, 2014 WL 700096, at *2. For the same reasons discussed at length above, the court finds that the settlement here is fair and reasonable.

With regard to the second question of whether the settlement undermines the FLSA, the court examines whether the proposed settlement adheres to the statute's purpose, which is to protect employees' rights from employers who generally wield superior bargaining power. *Id.* "In considering whether the FLSA has been undermined, this Court looks at (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA." *Herring*, 2016 WL 7868819, at *2.

As for the first factor, all employees similarly situated to the Named Plaintiffs have been included in the FLSA collective and Rule 23 classes. Joint Motion at 15. Per the parties' representation, "[t]he hybrid nature of Plaintiff's complaint ensured that all of Defendants' employees who were allegedly disadvantaged by their employers' superior bargaining power, and who were allegedly denied overtime wage payments and rest periods, would be included in the collective settlement in the employees' favor. By including and recovering damages for all similarly-situated employees, this lawsuit countered the bargaining power advantage normally enjoyed by Defendants." *Id.* Based on these joint representations, which are supported by the record before the court, the court finds that the first *Baker* factor supports a finding that the settlement effectuates rather than undermines the purpose of the FLSA.

Turning to the second factor, "the likelihood that the plaintiff's circumstances will recur,"

the court discerns no reason to anticipate anything other than Defendants' compliance with the FLSA going forward. In light of the history of the instant ligation, and Plaintiffs' success in prosecuting it, "Defendants are aware that any future violations of the statute would be very likely to come to light and be litigated, further deterring future violations." *Id.* at 16. In addition to the deterrence point, the court observes that Defendants and their counsel have worked cooperatively with the opposing parties to achieve a resolution of this dispute, evincing their good faith in seeking to rectify the past alleged violations of the FLSA and affirmatively portending compliance in the future. Therefore, the second *Baker* factor supports a finding that the settlement effectuates rather than undermines the purpose of the FLSA.

Regarding the third *Baker* factor, "whether the defendant has a history of non-compliance with the FLSA," here the "Defendants represent that they have never been part of an enforcement action brought by any governmental agency or private plaintiff seeking to enforce the FLSA." *Id.* Because there is no history of non-compliance with the FLSA, the Court finds that this third factor supports a finding that the settlement effectuates rather than undermines the purpose of the FLSA.

In sum, having weighed the relevant *Baker* factors, the court preliminarily finds that the settlement is fair and equitable to all parties.

***Attorney's fees.*** The third component of the fairness analysis is for the court to determine the reasonableness of the attorney's fees requested in the settlement. *See Herring*, 2016 WL 7868819, at *2. As noted above, Plaintiffs seek approval of their counsel's fee totaling thirty-three per cent of the settlement fund. Joint Motion at 16-17. Plaintiffs and their counsel have secured a common fund settlement of $299,000.00 for 157 low-wage clerical workers in the

healthcare industry. Defendants do not object to the fee sought.

The FLSA provides that "[t]he court in [an FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" where plaintiffs prevail. 29 U.S.C. § 216(b). "In [wage and hour] class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund." *Shaw v. Interthinx, Inc.*, 13-cv-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)). Courts generally award attorney fees in common fund cases "based on a percentage of the common fund obtained for the benefit of the class," thus "proportionately spreading payment of attorney fees among the class members." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *2-3 (D. Colo. Dec. 22, 2010); *Anderson v. Merit Energy Co.*, Nos. 07-cv-00916-LTB-BNB, 07-cv-01025-REB-MJW, 2009 WL 3378526, at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created.").

Courts review percentage attorney fee awards for reasonableness, looking to the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) ("Because [the *Johnson*] factors measure the attorneys' contributions, they are [ ] appropriate in setting and reviewing percentage fee awards in common fund cases."). The *Johnson* factors are: "(1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment

by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed

or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount

involved and the results obtained, (9) the experience, reputation and ability of the attorney, (10)

the 'undesirability' of the case, (11) the nature and length of the professional relationship with

the client, and (12) awards in similar cases." *Brown*, 838 F.2d at 454-55 (citing *Johnson*, 488

F.2d at 717-19.

As noted above in connection with the preliminary certification of the Rule 23 class, the

court has considered the attorney's fees question and determined that the amount sought here is

typical of those generally deemed reasonable in cases of this type. Further belaboring the point is

not necessary, but for completeness, the court finds that ten of the twelve *Johnson* factors are

applicable here and support this court's preliminary approval of the fee award.[5] Briefly, and

taking the factors in order, the court finds as follows:

> (1) counsel for Plaintiffs has dedicated significant time and resources to this multi-
> year litigation, including in connection with two formal mediations and the filing
> of multiple pleadings in this federal case, and more time will be spent in seeing the
> settlement through to its conclusion;

> (2) this case involves hybrid classes and so is more complex than either a standalone
> FLSA collective action or Rule 23 class action would have been;

> (3) counsel, whose practice focuses on low-wage workers, exhibited the skill
> required to gain a successful result for his clients;

> (4) counsel spent over 180 hours litigating this matter, an expenditure of time that
> necessarily precluded him from performing other work for more than one-twelfth
> of a calendar year;

> (5) the thirty-three per cent award sought is within the range of customary fee

---

[5] *See* Attorney Fee Motion at 3-9 (discussing application of *Johnson* factors to the instant case).

awards in similar cases;

(6) counsel worked on a contingency fee basis, thus assuming the risk that he would not recover any fees, but also providing access to counsel for persons who otherwise would not have been able to afford legal representation;

(7) per counsel's representation, because the case proceeded through a normal course of litigation, this factor is not applicable;

(8) the favorable result counsel achieved—a $299,000.00 settlement for 157 low-wage workers—redounds in favor of a finding of reasonableness;

(9) counsel's extensive experience in litigation involving federal and state wage statutes and regulations is manifested in the successful outcome he achieved for his clients;

(10) the case, which reasonably could only have been litigated via a contingency fee arrangement, likely rendered it undesirable to a large number of the members of the bar of this Court;

(11) per counsel's representation, because he did not have a professional relationship with Plaintiffs or any class member prior to the instant litigation, this factor is not applicable; and

(12) the award sought here is similar to those awarded in other cases, as previously discussed.

To sum up, having weighed the applicable *Johnson* factors, the court finds that the Proposed Settlement Agreement contains a reasonable award of attorney's fees and that the fee award should be **PRELIMINARILY APPROVED**.

*　　*　　*

In conclusion, having considered whether the FLSA settlement was reached as a result of a bona fide dispute, whether the settlement is fair and equitable to all parties, and whether the settlement contains a reasonable award of attorney's fees, the court finds that the Proposed

Settlement Agreement should be **PRELIMINARILY APPROVED**. *See Herring*, 2016 WL 7868819, at *2.

  C.  **Reasonableness of the Service Awards**

  The court next must determine whether the service awards to the Named Plaintiffs, in the amount of $10,000.00 each, are reasonable. "Named plaintiffs are eligible for reasonable incentive payments as part of a class action settlement." *Pliego*, 313 F.R.D. at 131 (quotation, alteration marks, and ellipses omitted). When determining whether a service award is reasonable, courts consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class benefited from those actions, the time and effort required to pursue the litigation, and any reasonable fears of workplace retaliation. *Id.*

  Here, the court finds that the putative class members have benefited from this action in that they will be permitted to recover potentially lost wages that otherwise may not have been paid out. *Crocs*, 306 F.R.D. at 689. The parties represent that the Named Plaintiffs provided important help during the litigation process, assisting counsel with reviewing documents, communicating with class members, and "ma[king] sure that the interests of the Class were at the forefront of the [settlement] negotiations." Joint Motion at 19. These would seem to be consequential tasks, [6] and the court further notes that the proposed awards appear to be in line

--------

[6] The court is less convinced, at this juncture, that the Named Plaintiffs "took a substantial risk in coming forward with reports of Defendants' wage and hour law violations when no other employees were willing to do so." Joint Motion at 19. Neither of the Named Plaintiffs were employed by Defendants at the time this lawsuit was filed. *See* ECF No. 1 ¶¶ 9-10; *cf. Suaverdez*, 2021 4947238, at *10 (finding that plaintiff's current employment with the defendant was a factor that weighed in favor of a service award: "Because Mr. Suaverdez remains an employee of Circle K, there was a reasonable fear of workplace retaliation resulting from his pursuit of the wage-and-hour claims against his current employer") (cleaned up) (citing *Johnson v. Meriter*

with—if not somewhat lower than—awards that others that have been approved in class settlements in this District. *See, e.g.*, *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. May 19, 2014) (approving $15,000 service award for class representative); *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-NRN, 2020 WL 4057585, at *2 (D. Colo. July 20, 2020) (approving $20,000 service award for each of six plaintiffs); *Bagoue v. Developmental Pathways, Inc.*, No. 16-cv-01804-PAB-NRN, Docket No. 149 slip op. (Order of Oct. 28, 2020, approving a $30,000 service award to the named plaintiff).

Accordingly, the court **PRELIMINARILY APPROVES** the proposed service awards for the two Named Plaintiffs.

### D.    Issuance of the Notice

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." The notice provided to a class certified under Rule 23(b)(3) must be the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). Such notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for

---

*Health Servs. Emp. Ret. Plan*, No. 10-cv-00426-WMC, 2015 WL 13546111, at *4 (W.D. Wis. Jan. 5, 2015) (recognizing that current employees risk retaliation from their current employer by acting as named plaintiffs)). Regardless, the court does not find that this fact precludes preliminary approval of the service awards requested here.

requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B); *Pliego*, 313 F.R.D. at 132.

The court has reviewed the parties' proposed Notice and accompanying opt-out form, ECF No. 34-1 at 19-27, which meet each of these requirements. The proposed Notice and opt-out form describe the case, the damages to be awarded to each class member, the process by which class members may opt-out or object to the settlement, and informs class members of their right to be heard at a final fairness hearing. Accordingly, the Notice is **APPROVED** and the parties are **ORDERED** to issue the Notice, properly completed in accordance with this order, and the accompanying opt-out form.[7]

## CONCLUSION

For the foregoing reasons, the terms of the Proposed Settlement Agreement (ECF No. 34-1 at 2-18) are hereby preliminarily approved. The court finds that the proposed settlement (the "Settlement") is the product of informed arm's-length negotiation by counsel; contains no obvious deficiencies that would prevent preliminary court approval; bears a reasonable relationship to the claims alleged by the Named Plaintiffs and the litigation risks of Plaintiffs as well as Defendants; and does not improperly grant preferential treatment to the Named Plaintiffs or segments of the settlement class. Accordingly, the court preliminarily finds that the Settlement is fair, reasonable, and adequate, and that the settlement class should be given notice thereof. Accordingly,

---

[7] The parties are of course authorized to update the date references in their proposed documents, which contemplated that this order would issue earlier.

IT IS HEREBY **ORDERED**[8] that the Joint Motion is **GRANTED** as follows. The parties' Settlement Agreement (ECF No. 34-1 at 2-18) is preliminarily approved, the parties' Notice and accompanying Request for Exclusion (ECF No. 34-1 at 19-27) are approved for issuance, and Plaintiffs' fee request (ECF No. 35) is preliminarily approved. Accordingly,

IT IS FURTHER **ORDERED** as follows:

1.     The Federal Rule of Civil Procedure 23 settlement class and FLSA collective class are defined as "[a]ll hourly business office employees who performed work off the clock from May 11, 2016 through the date of execution of the Settlement Agreement."

2.     As soon as practicable, but no later than **thirty (30) days** after this order is entered, the Third-Party Claims Administrator shall distribute copies of the completed Notice (ECF No. 34-1 at 19-27) to all potential settlement class members. Potential settlement class members shall have **sixty (60) days** from the date of the Notice's mailing to opt-out or to object to the Settlement Agreement (ECF No. 34-1 at 2-18).

3.     The court will hold a Settlement Hearing on **July 11, 2024, at 9:30 a.m.** (the "Settlement Hearing"), in Courtroom C-205, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado, for the following purposes: (a) to determine whether the Court should grant final certification of the Settlement Class solely for purposes of settlement; (b) to determine whether the proposed Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class and should be approved by the Court; (c) to determine whether a Final Order and Judgment should be entered; (d) to make a final ruling on Plaintiffs'

---

[8] As noted above, the parties consented to this court's jurisdiction to determine the Joint Motion and the Attorney Fee Motion. ECF No. 36.

fee request; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

4.     No later than **twenty-one (21) calendar days** prior to the Settlement Hearing, Plaintiffs and Defendants shall file with the court any papers in support of final approval of the Settlement. Copies of all papers shall be served upon all settlement class members who file a valid and timely objection to the Settlement or their counsel.

DATED: April 23, 2024                                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge