IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-CV-01176-RM-SP

SABRINA STANLEY and JUDY KOJETIN,

    Plaintiffs,

v.

PANORAMA ORTHOPEDICS AND SPINE CENTER, P.C.
and PMG LLLP,

    Defendants.

---

**JOINT MOTION FOR FINAL CERTIFICATION OF CLASS AND COLLECTIVE ACTION AND FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

---

Pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23(e), Plaintiffs Sabrina Stanley and Judy Kojetin ("Plaintiffs") and Defendants Panorama Orthopedics & Spine Center, P.C. and PMG LLP ("Defendants" or "Panorama") (collectively, the "Parties") jointly request final certification of the proposed class and collective action and for final approval of the Settlement Agreement (the "Settlement Agreement").

On April 23, 2024, the Court preliminarily approved the Settlement Agreement and certified the proposed collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and proposed class action under Fed. R. Civ. P. 23 for settlement purposes, and approved the form of class notice to be sent to the class/collective by the settlement administrator. Doc. 43 (Order Granting Preliminary Approval of Proposed Class Action Settlement).[1]

---

[1] "Doc. __" refers to the filing number of a document on the Case Management/Electronic Case Filing system for this civil action.

On May 23, 2024, notice was sent to all Class Members by the means approved by the Court by the settlement administrator, Simpluris, Inc. ("Settlement Administrator"), with the approved opt-out form. *See* Ex. 1, Declaration of Lisa Pavlik ("Pavlik Decl."), ¶8. Since then, no opt-out forms were returned, and no Class Member has objected to the settlement. *Id.*, ¶¶10-12, and Ex. A, attached thereto. The Parties now respectfully seek final approval of the Settlement Agreement, s*ee* Fed. R. Civ. P. 23(e), at the fairness hearing scheduled for August 5, 2024 at 1:30 p.m.

I. **BACKGROUND.**

Plaintiffs filed this action for unpaid wages on May 11, 2022. Plaintiffs allege that Defendants failed to pay their clerical staff for off-the-clock work they performed for Defendants. Doc. 1. Plaintiffs pleaded Fed. R. Civ. P. 23 class violations of Colorado wage statutes, and collective allegations of the Federal Fair Labor Standards Act (29 U.S.C. § 201 et seq.) (collectively, "Class Claims"). Defendants filed an Answer denying the allegations in Plaintiffs' Class Complaint and denying that they engaged in any wrongdoing. Doc. 18.

The Parties agreed to engage in early settlement negotiations and exchanged a large volume of timekeeping and wage payment data in preparation for mediation. The Parties attended a formal mediation with Judge Bill Meyer of the Judicial Arbiter Group on January 25, 2023. That mediation did not result in settlement. Settlement failing, the Parties engaged in further informal discovery and damages calculations and returned to mediation with Judge Meyer on June 13, 2023.

The second mediation resulted in settlement. The Parties' settlement contemplates a stipulated Fed. R. Civ. P. 23 class and collective class under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. as to Plaintiffs' Class Claims. On April 23, 2024, the Court granted the Parties' request to certify their stipulated Rule 23 Class and FLSA Collective Class for

2

purposes of settlement and preliminarily approved their Settlement Agreement and Notice. *See* Doc. 43. The terms of the settlement reflect several months of arms-length negotiations between the Parties dating back prior to the mediation and contain a fair and reasonable settlement of the claims in this case, as this Court has already found in granting preliminary approval. *Id*.

## II.     SUMMARY OF THE SETTLEMENT TERMS.

### A.     Settlement Background and Procedure.

The fully executed Settlement Agreement (Doc. 34-1), provides that, for purposes of settlement only, the Parties agreed to certify the proposed class and collective action as defined "all hourly business office employees who performed work off the clock from May 11, 2016 through the date of the execution of the Settlement Agreement." Doc. 34, at p. 3. The Court preliminarily certified the class and collective action and granted preliminary approval of the Settlement Agreement on April 23, 2024. Doc. 43.

The Settlement Administrator delivered the Notice of Preliminary Approval of Settlement and Hearing Date for Final Court Approval ("Notice") and Opt-Out Form to each Class Member on May 23, 2024. Ex. 1, ¶8. Pursuant to the terms of the Settlement Agreement, there were re-mailings of undeliverable notices to the current addresses of the Class Members located by the Settlement Administrator. *Id.*, ¶9.    The deadline for Class Members to submit a Request for Exclusion, or Object to the Settlement is July 22, 2024, and the extended re-mail deadline is July 29, 2024. *Id.*, ¶10. As of this date, the Settlement Administrator has not received any Request for Exclusion from a Class Member and has not received any Objections to the Settlement from Class Members.  *Id*., ¶¶11-12.

### B.     Settlement Terms and Methodology for Distribution.

The settlement provides that Defendants will make payment of $299,000.00 into a

3

Settlement Fund to be administered by a Class Administrator to compensate Plaintiffs and the Members of the Class who do not opt-out for their damages, inclusive of attorney fees and costs and incentive awards to the representative Plaintiffs ("Settlement Fund"). Doc. 34, p. 3. In addition to and separately from the Settlement Fund, Defendants will pay settlement administration costs up to $10,000.00, mediation costs and the employer's portion of required withholding and payroll taxes. *Id*. The Settlement Fund represents only a $10,000 service award to each of the Named Plaintiffs, attorneys' fees and costs, back wages, and statutory penalties and damages. *Id*. The Settlement Fund resolves any and all claims within the scope of the release set forth in Section VIII of the Settlement Agreement, up to and including the date of Final Approval. Doc. 34-1, p. 7.

The Settlement, less deduction for payments to class representatives, attorneys' fees and costs, the costs of administration of the Settlement, and a certain portion of employer's taxes (the "Net Settlement Amount"), will be distributed to each Class Member based upon a pro rata share (stated as a percentage). Doc. 34-1, p. 12-13. Each Class Member's pro rata share is calculated based on records of time worked and wages paid by Defendants. *Id*.

C.   **Notice to the Settlement Class.**

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir.

2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, "[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

In this case, after Court granted the preliminary approval of settlement, the Parties provided the Settlement Administrator with the applicable Notice documents. Ex. 1, ¶5. The Notice contains information regarding the nature of the lawsuit, the definition of the class, the methodology for calculation of the pro rata share of each class member, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement. *Id*. at Ex. A thereto.

On May 10, 2024, the Parties provided the Settlement Administrator with the Class List containing Class Members' names, most recent mailing address, telephone numbers, email address, Social Security Numbers, and allocation in the Settlement. Ex. 1, ¶6. The Class List contained data 157 Class Members. *Id*., ¶6. The Settlement Administrator processed and updated the mailing addresses in the Class List by utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id*., ¶7. The NCOA contains requested changes of address filed with the U.S. Postal Service. *Id*. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Notice. *Id*. The Settlement Administrator was able to locate 27 updated addresses using NCOA prior to the mailing of the Notice. *Id*.

On May 23, 2024, the Settlement Administrator mailed the Notice to 157 Class Members with addresses contained in the Class List via First Class mail or updated via the NCOA search. *Id.*, ¶8. A total of fifteen Notices were returned to the Settlement Administrator. Of these, two were returned with a forwarding address. *Id.*, ¶9. If a Class Member's Notice was returned by the USPS as undeliverable and without a forwarding address, the Settlement Administrator performed an advanced address search (*i.e.*, skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. *Id.* The Settlement Administrator used the Class Member's name and previous address to locate a current address. *Id.* Through the advanced address searches, the Settlement Administrator was able to locate ten updated addresses and promptly mailed a Notice to those updated addresses. *Id.* Ultimately, two Notices that were undeliverable. *Id.*

The Settlement Agreement provides that in the event Class Members cannot be located through reasonable efforts by the Claims Administrator or there are any monies remaining in the Settlement Fund account after distribution for any reason, such amounts will be distributed on a pro-rata share basis to those Class Members who cash their initial settlement checks. Doc. 34-1, pp. 12-13.

### III.     REQUEST FOR FINAL APPROVAL OF SETTLEMENT.

**A.     The Court Should Approve the Class Settlement as Fair and Reasonable for the Purposes of the Fair Labor Standards Act.**

In actions involving FLSA claims, such as the one here, "the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." *Morton v. Transcend Servs.*, 2017 WL 977812, *1 (D. Colo. March 13, 2017) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

A district court may approve an FLSA collective action settlement after "scrutinizing settlement for fairness" and deciding whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982).

> [I]n determining whether to approve a FLSA settlement, this Court considers whether (1) the FLSA settlement is reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees. With respect to the second factor, this Court evaluates, first, whether the settlement is fair and reasonable, and, second, whether the settlement undermines the purposes of the FLSA. In considering whether the FLSA has been undermined, this Court looks at (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of noncompliance with the FLSA.

*Herring v. Thunder Ridge Trucking and Filtration, Inc.*, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

As discussed below, and as the Court preliminarily determined (Doc. 43), all elements are satisfied, and therefore the Court should approve the Settlement Agreement at the fairness hearing.

### 1. **A Bona Fide Dispute Exists Between the Parties.**

Parties seeking approval of an FLSA settlement may establish that a bona fide dispute exists by presenting: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker v. Vail Resorts Mgmt. Co.*, 2014 WL 700096, *1 (D. Colo. Feb. 24, 2014).

Here, as to *Baker* factor (1), Defendants dispute that they failed to pay wages for off-the-clock work and contend that any violations of the FLSA were not willful. As to *Baker* factor (2), the Parties represent that Defendants operate an orthopedic health care enterprise. The settling Plaintiffs were Defendants' hourly clerical employees.

As to *Baker* factor (3), though Defendants do not dispute their employees' right to be paid minimum and overtime wages pursuant to the FLSA, they do dispute whether they failed to pay for all hours worked in violation of the FLSA. The employees, on the other hand, and in reference to *Baker* factor (4), allege that Defendants did in fact fail to pay for all hours worked in violation of the FLSA.

As to *Baker* factor (5), the Parties based their settlement discussions on an in-depth review of Defendants' time-worked and wages-paid records. The Parties dispute the accuracy of those records and took this dispute into account in their settlement negotiations. In light of all of the above, the Parties disagree as to the merits and "this case is not sham litigation… it very much involves a bona fide dispute between adversarial opponents." *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013).

### 2. The Settlement is Fair and Equitable to All Parties.

#### a. The Settlement is Fair and Reasonable.

In determining whether an FLSA settlement is fair and reasonable, Courts consider the same factors applied in the Rule 23 settlement fairness analysis. *Baker*, 2014 WL 700096, *2 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). Courts apply the following factors to determine whether a proposed Rule 23 class action settlement is fair, reasonable and adequate: (1) Whether the proposed settlement was fairly and honestly negotiated; (2) Whether serious questions of law and fact exist which place the ultimate outcome

8

of the litigation in doubt; (3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) Whether the parties' judgment is that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

First, the proposed Settlement Agreement was fairly and honestly negotiated. This case was litigated, and the proposed settlement was reached, in the context of Plaintiffs' federal class action lawsuit. The parties were represented by counsel with extensive experience in wage and hour class litigation. The parties reviewed all available time-worked and wage payment records. The Parties agreed to engage in early settlement negotiations and exchanged a large volume of timekeeping and wage payment data in preparation for mediation. The Parties attended a formal mediation with Judge Bill Meyer of the Judicial Arbiters Group on January 25, 2023. That mediation did not result in settlement. Settlement failing, the Parties engaged in further informal discovery and damages calculations and returned to mediation with Judge Meyer on June 13, 2023. The second mediation resulted in settlement. Settlement negotiations were contested and contentious. Counsel utilized their experience in similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk, to arrive at a fair and reasonable compromise.

Second, serious questions of fact exist because the parties contest whether the time records available are accurate as to the hours actually worked by the members of the Class. These records are at the heart of the case, and a factual finding in either party's favor would be determinative, thus presenting a large litigation risk to both sides. Such risk counsels toward a mediated resolution.

Third, the value of an immediate recovery outweighs the mere possibility of future relief

9

after protracted and expensive litigation. As above, the number of hours worked off-the-clock by each Class Member is contested and presents significant litigation risk to both sides. The contested scope of damages recoverable makes the immediate recovery provided by the Settlement outweigh the possibility of future relief.

Finally, the Parties, with the advice of experienced counsel, are confident that the settlement is fair and reasonable.

### b. The Settlement Does Not Undermine the FLSA.

To find that an FLSA settlement does not undermine the Act, courts query whether the proposed settlement adheres to the statute's purpose, which is to protect employees' rights from employers who generally wield superior bargaining power. *Baker*, 2014 WL 700096, *2. To make this determination, courts examine (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA. *Herring*, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

First, all Defendants' employees who were similarly situated to Plaintiffs during the applicable statutory periods were included in the Rule 23 Class. The hybrid nature of Plaintiffs' complaint ensured that every single one of Defendants' employees who were disadvantaged by their employers' superior bargaining power, and who were allegedly denied pay for time worked off-the-clock, would be included in the class settlement in the employees' favor. By including and recovering damages for all similarly situated employees, this lawsuit countered the bargaining power advantage normally enjoyed by the Defendants. This settlement thus effectuates rather than undermines the purpose of the FLSA.

Second, given that Defendants have paid a high price for their alleged violations of the

FLSA, they have a strong incentive to refrain from engaging in conduct violative of the statute in the future. Because Defendants' employees have now participated in a successful wage enforcement class action, and because the class members are in contact with their counsel who specializes in FLSA litigation, Defendants are aware that any future violations of the statute would be very likely to come to light and be litigated, further deterring future violations.

Finally, Defendants represent that they have never been part of an enforcement action brought by any governmental agency or private plaintiff seeking to enforce the FLSA. Because there is no history of non-compliance with the FLSA, this factor weighs in favor of approval of this settlement.

### 3. **The Settlement Contains a Reasonable Award of Attorney Fees.**

To approve the Settlement Agreement, this Court must be satisfied that the award of attorneys' fees and costs is reasonable. *Morton*, 2017 WL 977812, at *2. The Settlement Agreement provides Plaintiffs' counsel with attorneys' fees and costs amounting to 33% of the Settlement Fund. Defendants do not oppose this award of attorneys' fees and reasonable costs.

The FLSA provides "[t]he court … shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 28 U.S.C. § 216(b). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *Ali v. Jerusalem Restaurant, Inc.*, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015). Plaintiffs concurrently move the Court for approval of counsel's fee award totaling 33% of the Settlement Fund, plus reasonable costs.

### 4. **The Service Awards are Reasonable.**

Representative plaintiffs are eligible for reasonable incentive payments as part of class

11

action settlements. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $10,000.00 service awards here are appropriate because Class Representatives Sabrina Stanley and Judy Kotejin took a substantial risk in coming forward with reports of Defendants' wage and hour law violations when no other employees were willing to do so. Plaintiffs also materially assisted counsel in reviewing documents, communicating with Class Members and bringing the case to a successful conclusion to the benefit of all of their co-workers. The Class Representatives were not compelled to testify either by deposition or at a court hearing or to answer discovery; however, they advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations.

The modest incentive awards sought here are reasonable. *See, e.g., Ramirez et al. v. El Tapatio, Inc. et al.*, Case No. 13-cv-00861 REBBNB, Doc. No. 58 (D. Colo. 2013) (approving $10,000.00 incentive award to class representative in wage class action); *Van Vranken*, 901 F. Supp. at 300 (approving $50,000 participation award to a single class representative); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiffs in a wage and hour case); *Rausch v. Hartford Fin. Servs. Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

### B. FLSA Final Certification and Approval.

"When parties settle FLSA claims before the Court has made a final certification ruling,

the court must make some final class certification finding before it can approve a collective action settlement." *Tommey v. Computer Sciences Corp.*, No. 11-cv-2214, 2015 WL 1623025, at *1 (D. Kan. April 13, 2015). "Final certification for settlement purposes requires the Court to determine whether the settlement class members are similarly situated." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171 (D. Colo. 2018). For settlement purposes only, the Parties agree that the FLSA class is similarly situated for the same reasons the Court preliminarily certified the FLSA class, *i.e.*, because the alleged policies would have affected each class member equally during each workweek at issue. *See* Doc. 43 (preliminarily approving settlement and certifying the FLSA class). The Court should finally certify the FLSA class at the fairness hearing for the reasons set forth in the parties' motion for preliminary approval. *See* Doc. 43.

### C.   The Court Should Approve the Class Settlement as Fair and Reasonable for the Purposes of Rule 23.

Under Fed. R. Civ. P. 23(e)(2), a court may approve a class action settlement only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

- A. the class representatives and class counsel have adequately represented the class;
- B. the proposal was negotiated at arm's length;
- C. the relief provided for the class is adequate, taking into account:
    - i. the costs, risks, and delay of trial and appeal;
    - ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;
    - iii. the terms of any proposed award of attorney's fees, including timing of payment; and
    - iv. any agreement required to be identified under Rule 23(e)(3); and
- D. the proposal treats class members equitably relative to each other.

#### 1.   **Adequate Representation**.

Plaintiffs selected specialized counsel with extensive experience in litigating the minimum labor standards claims of low-wage workers. Plaintiffs' counsel has successfully served as class

counsel in numerous certified Rule 23 class actions like this one. "[T]he experience of the proposed class representative's chosen counsel in similar previous litigation has been held an important factor favoring adequacy of representation. Regarding whether a lead plaintiff and its counsel will vigorously prosecute the action on behalf of the class, 'the experience and competence of the attorney representing the class may inform the court's analysis.'" *United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted). Plaintiffs and their counsel have prosecuted this action vigorously on behalf of the class.

### 2. **The Relief Provided Is Adequate.**

In arriving at the Settlement, Plaintiffs have considered all material factors, including the "costs, risks, and delay of trial and appeal," as well as the ability to collect on a significant judgment. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The proposed Settlement strikes an appropriate balance between the strength of the Plaintiffs' case and the benefit to the class of securing a settlement now, rather than after contentious and intense litigation, lengthy trial, and inevitable appeals process.

Additionally, $299,000.00 is a significant recovery for the Named Plaintiffs and the Class Members. In order to be assured of the fairness of the settlement amount, Class Counsel asked Defendants for, and Defendants provided, employment data for every member of the classes for the entire class period. Based on the payroll and time keeping software data, the Class Counsel calculated the total number of hours worked by comparing data for hours worked in Defendants' timekeeping system with data showing hours worked in Defendants' other IT systems which logged when class members were actually performing work. Further, Class Counsel was able to provide a guaranteed floor recovery to those Class Members who worked very small amounts of

time off the clock. Counsel did so by harvesting the difference between what Defendants paid to some Class Members during the pendency of the litigation, and what those employees were actually owed. The remainder was distributed to those Class Members with small recoveries at a floor rate of $195.75.

Thus, given the risks and costs of proceeding, the $299,000.00 settlement amount is a fair and adequate compromise for all Class Members.

### 3. The Settlement Is Equitable Among Class Members.

Under Rule 23(e)(2)(D), the proposal treats class members equitably relative to each other because the funds will be distributed *pro rata* to class members based on hours worked for the Defendants within the relevant time period, with a guaranteed floor for Members with small recoveries that does not reduce the recoveries of the other Class Members. *See* Doc. 34-1 at pp. 13. There are therefore "no grounds to doubt [the Settlement's] fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys). . . ." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006).

### IV. CONCLUSION.

For the reasons set forth in detail herein, the Court should certify the Parties' proposed settlement class for purposes of settlement only and finally approve the Parties' agreed-upon Settlement Agreement.

Respectfully Submitted this 15th day of July, 2024:

<div style="display: flex;">

<div>

*s/ Brandt Milstein*
MILSTEIN TURNER, PLLC
2400 Broadway, Suite B
Boulder, CO 80304
303.440.8780
brandt@milsteinturner.com
*Attorney for Plaintiffs*

</div>

<div>

s/ Juan C. Obregon
John Husband
Juan Obregon
HOLLAND & HART, LLP
555 17th Street St., Suite 3200
Denver, CO 80202
303.295.8545
JCObregon@hollandhart.com
Jhusband@hollandhart.com
*Attorneys for Defendants*

</div>

</div>

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2024, I have caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to all counsel of record.

<div style="text-align: right">

*s/ Juan C. Obregon*
Juan C. Obregon

</div>

32419470_v1